UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RICKY WOODS, for himself and as Parent
and Natural Guardian of R.W., an infant;
and SYLVESTER PETERSON,

      Plaintiffs,

 -v-              6:12-CV-1442

MARK WILLIAMS, Individually and as the
chief of police of the City of Utica, New York
police department; JAMES HOLT,
Individually and as a police officer of the City
of Utica, New York; PAUL PALADINO,
Individually and as a police officer of the City
of Utica, New York; THE CITY OF UTICA,
NEW YORK; JOSEPH CIMPI, Individually
and as a police officer of the City of Utica,
New York; SAMUEL GEDDES, Individually
and as a police officer of the City of Utica,
New York; JOSHUA GRANDE, Individually
and as a police officer of the City of Utica,
New York; FRANCES KUHN, Individually
and as a police officer of the City of Utica,
New York; CHRISTOPHER FANIGLULA,
Individually and as a police officer of the City
of Utica, New York; and ASHLEY CAVE,
Individually and as a police officer of the City
of Utica, New York,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| STEPHEN L. LOCKWOOD, P.C.<br>Attorneys for Plaintiffs<br>285 Genesee Street<br>Utica, NY 13501 | STEPHEN L. LOCKWOOD, ESQ.<br>DANIEL N. CAFRUNY, ESQ. |

| | |
|---|---|
| OFFICE OF CORPORATION COUNSEL<br>CITY OF UTICA<br>Attorneys for Defendants<br>One Kennedy Plaza<br>Utica, NY 13502 | JOHN P. ORILIO, ESQ.<br>ZACHARY C. OREN, ESQ. |

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

### I. **INTRODUCTION**

This case arises from actions taken by members of the Utica Police Department ("UPD") at an event being held at the Uptown Theater on Genesee Street in Utica, New York, on the night of September 23 and 24, 2011. Plaintiffs Ricky Woods ("Woods")[1] and Sylvester Peterson ("Peterson") commenced this civil rights action on September 19, 2012. They filed an amended complaint on October 16, 2012, and, by stipulation, a second amended complaint on April 2, 2013. The defendants include the City of Utica ("the City"); Mark Williams, Chief of the UPD ("Chief Williams"); and UPD officers James Holt, Paul Paladino, Joseph Cimpi, Samuel Geddes, Joshua Grande, Frances Kuhn, Christopher Faniglula, and Ashley Cave (collectively "defendants").

On May 30, 2013, defendants filed a motion to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule __"). Plaintiffs oppose and have filed a cross-motion seeking leave to file a third amended complaint pursuant to Rule 15(a). The proposed third amended complaint does not contain any additional claims and removes defendants Joseph Cimpi, Joshua Grande, Frances Kuhn, and Ashley Cave

---

[1] Woods initiated this lawsuit on his own behalf and in his capacity as the parent and natural guardian of "R.W.," an infant.

- 2 -

from the caption.  It delineates two federal causes of action and six pendent state law causes of action.[2]  Defendants oppose the cross-motion and maintain that the proposed third amended complaint must be rejected as futile.

The motions have been fully briefed.  Oral argument was heard on August 27, 2013, in Utica, New York.  At oral argument, plaintiffs' counsel clarified that their federal claims only include alleged violations of the First Amendment right to freedom of speech and association and the Fourth Amendment right to be free from illegal searches and seizures.[3]  Decision was reserved.

## II. **FACTUAL BACKGROUND**

The following facts, taken from the proposed third amended complaint, are assumed true for purposes of the motion to dismiss.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

Plaintiffs are African–American residents of Utica.  They publicized, produced, and performed in a talent show that began at 9:00 p.m. on Friday, September 23, 2011, at the Uptown Theater on Genesee Street in South Utica.  This event was organized to showcase local artists and to celebrate African–American music and culture.  It was well-attended by people of various ages and races, and volunteers provided security at the front entrance of the theater.  These volunteers did not observe or report any suspicious activity during the

---

[2] The state claims are for assault, intentional infliction of emotional distress, false imprisonment, defamation/slander, tortious interference with contract, and tortious interference with prospective economic gain.

[3] This clarification was necessary because the first cause of action arguably contains several federal claims.  Plaintiffs also invoke the Fifth Amendment and 42 U.S.C. §§ 1981 and 1985 in addition to § 1983 in the proposed third amended complaint.  However, pursuant to plaintiffs' counsel's representation at oral argument, only the First and Fourth Amendment claims will be addressed.

- 3 -

event.

Performances were still taking place at approximately 12:30 a.m. on September 24, when numerous UPD officers arrived in marked and unmarked vehicles. The officers entered the theater with guns drawn. Defendant Holt—who has been implicated in a prior incident of racial discrimination while on duty—responded to the rear of the building and ordered Woods, his son, R.W., and several other black males to line up against the back wall of the theater. Holt held these men at gunpoint, yelled at them to "put [their] motherfucking hands against the wall," and then frisked them. Proposed 3d Am. Compl., ECF No. 37, ¶ 25 ("Compl."). While patting them down, he searched inside their pockets until another officer told him: "You're patting them for guns, not in their pockets." Id. ¶ 26. No weapons or illegal contraband was found, and none of the men were arrested or charged with a crime.

Defendant Geddes, a sergeant, then arrived at the rear of the building and stated to the group of men: "I'll explain, we got a call that two black males walked through the front door with rifles." Id. ¶ 29. He then ordered the group to leave the premises.

Meanwhile, inside the theater, defendants Paladino and Faniglula ordered Peterson to "get the fuck against the wall," but allowed white patrons to leave the premises without being searched. Id. ¶ 31. They then searched Peterson and several other black individuals. During the search, the officers placed their hands inside Peterson's pockets. Peterson and the rest of the group were then ordered to leave the premises. An officer remained posted at the entrance to the Uptown Theater to prevent the patrons from re-entering the building. As a result of the police response, the talent show ended abruptly and plaintiffs lost money.

On October 13, 2011, Chief Williams gave a telephone interview to Cassandra Harris–Lockwood, editor of a local weekly newspaper and president of a local non-profit

organization. During the interview, Chief Williams made several false statements about plaintiffs and the talent show. He stated that officers found evidence suggesting plaintiffs operated an illegal cabaret, sold alcohol without a license, promoted illicit sex and drug use, and illegally possessed weapons. Plaintiffs have been unable to secure another venue for a future show due to the UPD's response to the talent show and Chief Williams's subsequent public statements. Further, defendants have approached the owners of local venues and threatened to revoke liquor licenses and implement other sanctions if they permit plaintiffs to rent their facilities for future events.

## III. DISCUSSION

### A. Plaintiffs' Cross-Motion to Amend

Defendants argue that plaintiffs' request for leave to file a third amended complaint should be denied because the deadline for filing amended pleadings, as outlined in the Uniform Pretrial Scheduling Order, has passed.[4] Further, defendants assert plaintiffs have failed to establish good cause to permit the amendment. In the alternative, they assert that permitting plaintiffs to file the proposed third amended complaint would be futile as it would not survive the pending motion to dismiss.

While Rule 15(a) normally governs a motion to amend, Rule 16 guides where the deadline to amend has passed. According to Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Whether good cause exists depends primarily on the diligence of the moving party. Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000).

---

[4] The deadline was May 15, 2013. Plaintiffs first indicated their intent to file a third amended complaint on June 6, 2013.

There is no showing of lack of diligence on plaintiffs' part. The allegations they seek to add were only discovered upon receipt of police reports provided by defendants in March 2013. This time period is not indicative of undue delay. Moreover, defendants have had sufficient time to review and respond to the proposed third amended complaint in writing and at oral argument. The proposed amendments do not add new parties, claims, or significantly expand the factual allegations. Further, the litigation is in its early stages, only minimal discovery has been exchanged, and there is no indication of bad faith on plaintiffs' part. Therefore, the fact that the deadline to amend has passed is not fatal to plaintiffs' cross-motion.

Leave to amend a complaint should be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). Where, as here, plaintiffs seek to amend their complaint while a motion to dismiss is pending, a court "has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint." Roller Bearing Co. of Am., Inc. v. Am. Software, Inc., 570 F. Supp. 2d 376, 384 (D. Conn. 2008) (internal quotation marks and alteration omitted).

As defendants had sufficient opportunity to respond to the proposed third amended complaint with written submissions and at oral argument, and plaintiffs do not seek to add new defendants or claims, the merits of the motion to dismiss will be considered in light of the proposed third amended complaint. If the proposed third amended complaint cannot survive the motion to dismiss, then plaintiffs' cross-motion to amend will be denied as futile. See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

### B. Motion to Dismiss—Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Dismissal is appropriate only where plaintiffs have failed to provide some basis for the allegations that support the elements of their claims. See Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

When considering a motion to dismiss, the complaint is to be construed liberally, all factual allegations are to be deemed true, and all reasonable inferences must be drawn in the plaintiffs' favor. Chambers, 282 F.3d at 152.

### C. Defendants' Motion to Dismiss

Defendants maintain that the federal claims must be dismissed because: (1) the talent show was not protected speech; (2) defendants' actions were not motivated by the plaintiffs' exercising of their First Amendment rights; (3) plaintiffs' speech was not actually chilled; and (4) the individual defendants are entitled to qualified immunity.[5]

---

[5] Defendants also correctly point out that any profanity used by the officers during the incident cannot form the basis of any federal civil rights claims. See Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (Sotomayor, J.) ("[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." (internal quotation marks omitted)). Finally, it is noted that defendants initially argued that Sgt. Geddes and officers Faniglula and Paladino were not personally involved in the conduct that allegedly caused the deprivation of plaintiffs' constitutional rights. However, the proposed third amended complaint adds sufficient factual allegations, as outlined above, to establish the requisite personal involvement of these defendants.

**1. First Amendment Claim**

Plaintiffs allege that defendants broke up the talent show, ordered all patrons to disperse, and then defamed them and interfered with their ability to put on a show in other local venues. They claim this action was taken specifically to stifle their exercise of free speech and association, and because defendants have racial animus towards African–Americans and their culture. They specifically allege that defendant Holt has a documented history of racial animus, which has given rise to at least one prior federal civil rights case.

Plaintiffs asserting a claim that government officials retaliated against them for their exercise of free speech must show that: (1) they have an interest protected by the First Amendment; (2) defendants' actions were motivated by or substantially caused by the plaintiffs' exercise of that right; and (3) defendants' actions effectively chilled the exercise of the plaintiffs' First Amendment rights. Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998).

Defendants are correct that the First Amendment does not protect "a generalized right of 'social association.'" City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989). However, the talent show held at the Uptown Theater entailed more than simply patrons "coming together to engage in recreational dancing." Id. It was instead advertised as a celebration of African–American music and culture, and was attended by persons of various races. The event thus benefitted the public interest, bringing it within the ambit of First Amendment protection. See Roberts v. U.S. Jaycees, 468 U.S. 609, 622 (1984) ("[W]e have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."); Fighting Finest, Inc. v. Bratton, 95 F.3d 224, 228 (2d Cir. 1996) (plaintiffs' police boxing organization benefitted public interest,

rendering the matter "distinguishable from Stanglin, which involved the association of persons solely for recreational pursuits").

However, plaintiffs' First Amendment claim falters on the second element. There is nothing in the proposed third amended complaint to plausibly support their conclusory assertion that defendants' conduct was motivated or substantially caused by their celebration of African–American culture. The only factual allegation plaintiffs put forth to establish this element is a prior incident in which defendant Holt reportedly directed racial epithets at an African–American arrestee. However, it does not necessarily follow that every future law enforcement action taken by this defendant is motivated by racial animus. Nor does defendant Holt's history transfer to every other defendant officer. Plaintiffs do not cite any case law for the proposition that one prior incident of racial discrimination supports an inference of discriminatory animus for future conduct. Further, there are no allegations that any of the individual defendants, including Holt, uttered racial slurs during the incident at the Uptown Theater.

By plaintiffs' own admission, defendants' primary motivation for responding to the Uptown Theater in the early morning hours of September 24, 2011, was an emergency call reporting that two African–American men entered that building armed with rifles. Plaintiffs do not allege that defendants falsified this report as a pretext for breaking up the talent show. Instead, their complaint centers on the fact that defendants did not permit them to continue the event after the report had been investigated and the location secured. Again, there is nothing in the proposed third amended complaint but conclusory assertions that this conduct

was motivated by animus toward plaintiffs' race or their exercise of First Amendment rights.[6]

Accordingly, defendants' motion to dismiss the First Amendment claim will be granted, and plaintiffs' cross-motion to amend will be denied as futile with respect to this claim.

### 2. **Fourth Amendment Claim**

Plaintiffs' Fourth Amendment claim relates to their brief detention at the Uptown Theater and the pat-down search performed by the officers. However, in their memorandum of law and at oral argument, they concede that the police response to the theater was justified by a 9-1-1 call reporting armed intruders. Indeed, "Plaintiffs do not argue that no response should have been dispatched to the Uptown Theater, rather that Utica police officers simply clear the area and permit the show to resume." Pls.' Mem. Opp'n Dismiss, ECF No. 38, 19.

Even accepting all factual allegations as true and making all reasonable inferences in plaintiffs' favor, the brief detention and search of plaintiffs was justified by the 9-1-1 report, remained minimally intrusive, and was reasonably related to the need to secure the theater. In short, plaintiffs' allegations fail to state a plausible Fourth Amendment violation. See Mendoza v. City of Rome, 70 F. Supp. 2d 137, 143–44 (N.D.N.Y. 1999) (Munson, S.J.) (police officers did not violate the Fourth Amendment where they had reasonable grounds to detain plaintiffs at gunpoint, handcuff and frisk them, and immediately released them after approximately twenty minutes when further investigation produced no evidence implicating them in a reported crime).

---

[6] To the extent plaintiffs also allege that defendants prevented them from renting other venues in Utica, thereby stifling their First Amendment rights, there is similarly no factual allegations to support the assertion that defendants did so because of racial animus. While these allegations may be pertinent to the pendent state law claims, they are insufficient to state plausible federal First Amendment claims.

Moreover, the individual defendants are entitled to qualified immunity. Indeed, it was objectively reasonable for defendants to believe they did not violate plaintiffs' constitutional rights by detaining, searching, and promptly releasing them. See id. at 144–45 (citing Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991)).[7]

Accordingly, defendants' motion to dismiss the Fourth Amendment claim will be granted, and plaintiffs' cross-motion to amend will be denied as futile with respect to this claim.

### 3. Pendent State Claims

As both of the federal claims will be dismissed, the only claims that remain are the pendent state law claims. Pursuant to 28 U.S.C. § 1367(c)(3), supplemental jurisdiction over any remaining state claims is declined. As the state law claims will be dismissed without prejudice, plaintiffs may re-file them in state court within six months. See N.Y. C.P.L.R. § 205; Murray v. Visiting Nurse Servs., 528 F. Supp. 2d 257, 281 (S.D.N.Y. 2007) ("[S]ince New York's CPLR § 205 allows a plaintiff to recommence a dismissed suit within six months without regard to the statute of limitations, (the plaintiff) will not be unduly prejudiced by the dismissal of her state law claims." (internal quotation marks omitted)).

## IV. CONCLUSION

Although the deadline to file amended pleadings has passed, there is no indication of bad faith, undue delay, prejudice to defendants, or a showing of poor diligence by plaintiffs. Further, as defendants have had a sufficient opportunity to respond to the proposed third amended complaint, which adds neither parties nor claims, the pending motion to dismiss

---

[7] In addition, plaintiffs fail to plead sufficient factual allegations to establish municipal liability pursuant to Monell v. Department of Social Services of New York City, 436 U.S. 658, 694 (1978).

has been considered in light of that proposed amended pleading.

However, plaintiffs have failed to plead plausible First or Fourth Amendment claims. They make only conclusory assertions that defendants' conduct was motivated by animus toward their race or their expression and celebration of African–American music and culture. The defendants' actions taken at the Uptown Theater on the night of September 23 and 24, 2011, was justified by the report of armed African–American males, remained minimally intrusive, and was related to the need to ensure the safety of the officers and the public. Moreover, all individual defendants are entitled to qualified immunity, and plaintiffs have failed to identify a municipal policy, practice, or custom that caused their alleged constitutional injury.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss is GRANTED;

2. Plaintiffs' cross-motion for leave to file a third amended complaint is DENIED as futile;

3. All federal causes of action are DISMISSED with prejudice; and

4. The pendent state causes of action are DISMISSED without prejudice to their being brought in state court.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly and close the file.

_____
United States District Judge

Dated: February 19, 2014
       Utica, New York.